UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYLE AUFFRAY and JOHN JENKINS on behalf of themselves and all others similarly situated, | Index No.: 1:15-cv-9379(GHW)(SDA) |
| Plaintiffs, | |
| v. | |
| FXFL, LLC, BRIAN WOODS, ALAN PACE, and MICHAEL HALEM | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION SEEKING AN ORDER (1) CONDITIONALY CERTIFYING
THE SETTLEMENT CLASS; (2) GRANTING PRELIMINARY APPROVAL OF THE
STIPULATED CLASS SETTLEMENT AGREEMENT; (3) APPROVING THE
NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT
AND FAIRNESS HEARING AND CLAIM FORM; (4) APPROVING PLAINTIFFS'
PROPOSED SCHEDULE FOR FINAL SETTLEMENT APPROVAL AND
SETTING A DATE FOR THE FAIRNESS HEARING AND RELATED DATES;
AND (5) APPOINTING MCLAUGHLIN & STERN, LLP AS CLASS COUNSEL**

Lee S. Shalov, Esq.
Brett R. Gallaway, Esq.
Wade C. Wilkinson, Esq.
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Telephone:  212-448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com
wwilkinson@mclaughlinstern.com

*Attorneys for the Plaintiffs and the Settlement
Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

    I.    Factual Background ................................................................................................... 2

    II.   Procedural History ................................................................................................... 4

    III.  The Settlement Fund and Plan of Allocation .................................................... 5

    IV.  Releases ..................................................................................................................... 7

    V.   Notice to Settlement Class ..................................................................................... 8

    VI.  Attorneys' Fees and Litigation Costs .................................................................. 9

    VII. Service Award for Class Representatives .............................................................. 9

CLASS ACTION SETTLEMENT PROCEDURE ............................................................. 10

ARGUMENT ........................................................................................................................ 11

    I.    Standards for Preliminary Approval ................................................................... 11

    II.   The Settlement Falls Within the Range of Reasonableness ............................ 13

    III.  Conditional Certification of the Rule 23 Settlement Class Is Appropriate ...... 14

          A.  Numerosity ...................................................................................................... 16

          B.  Commonality .................................................................................................. 16

          C.  Typicality ......................................................................................................... 17

          D.  Adequacy of the Named Plaintiffs .............................................................. 18

          E.  Certification is Proper Under Rule 23(b)(3) ............................................... 19

               1.  Common Questions Predominate .................................................. 19

               2.  A Class Action Is Superior Mechanism ..................................... 20

    IV.  Plaintiffs' Counsel Should Be Appointed Class Counsel ............................... 22

    V.   The Notice Plan Is Appropriate .......................................................................... 23

          A.  The Notice Plan Satisfies Due Process ....................................................... 23

          B.  The Notice Plan and Award Distribution Process Are Appropriate .......... 24

CONCLUSION ..................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................... 19, 20

*Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 27, 2009) ................. 12, 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ......... 19

*Cruz v. Hook-Superx, LLC*, 2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010) ................. 20

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ............................................. 22

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ....................................................... 18

*Duckworth, et al v. Country Life Insurance Company, et al.*, Case No. 98-CH-01046,
    Circuit Court of Cook County, Illinois .................................................................................. 23

*Duling v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 164226
    (S.D.N.Y. Nov. 15, 2012) ...................................................................................................... 16

*Dziennik v. Sealift, Inc.*, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y.  May 29, 2007) ................... 18

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ......................................... 12, 17

*Gen. Tel. Co. of Sw. v. Falvon*, 457 U.S. 147 (1982) ................................................................. 16

*Gray v. Hydroxatone LLC et al.*, Index No.:2:11-cv-04586, U.S. Dist. Court,
    Dist. Of New Jersey ............................................................................................................... 23

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ...................................................................... 20

*Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................... 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177 (S.D.N.Y. 2007) ......... 13

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ............................. 24

*In re Prudential Securities Inc. Ltd. Partnerships*, 163 F.R.D. 200 (S.D.N.Y. 1995) ................. 13

*In re State Street Bank And Trust Co. ERISA Litigation*, 2009 WL 3458705
    (S.D.N.Y. 2009) ..................................................................................................................... 13

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980) ........................................................ 12

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............................ 19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .......................................... 11

*Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 52713 (S.D.N.Y. May 17, 2011) ........................... 21

*Khait v. Whirlpool Corporation*, 2009 U.S. Dist. LEXIS 114817 (E.D.N.Y. Oct. 2, 2009) ........ 18

*Ludwig v. Pret A Manger*, Index No.: 11-cv-5677 (S.D.N.Y.) .................................................... 23

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................................. 17

*Marriott v. Cnty. Of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005) ......................................... 19

*Marshall v. Deutsche Post DHL Express (USA) Inc.*, Index No.: 13-cv-1471 (S.D.N.Y.) .......... 23

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F. 3d 1072 (2d Cir. 1998) ............................... 12

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)................................................... 20

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004)................................................ 19

*Palacio v. E*TRADE Fin. Corp.*, 2012 U.S. Dist. LEXIS 41886 (S.D.N.Y. Mar. 12, 2012) ...... 15

*Ramirez v. Riverbay Corp.*, Index No.: 13-cv-2367 (S.D.N.Y.)................................................... 23

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993)........................................................................ 17

*Rojas v. Bronx Moon LLC*, U.S. Dist. LEXIS 175446 (S.D.N.Y. Oct. 10, 2018) ....................... 14

*Siewharack v. Queens Long Island Medical Group, P.C.*,
   Index No.: 11-cv-3603 (E.D.N.Y) ............................................................................................ 23

*Snyder v. Nationwide Mutual Insurance Company, et al*., Index No. 33-97-0494,
   Supreme Court of the State of New York ................................................................................ 23

*Terrana v. JCPenney*, Index No.: 13-cv-0460 (S.D.N.Y.) ........................................................... 23

*Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sep. 28, 2007).............. 18

*Tradex Global Master Fund SPC Ltd. et al. v. Lancelot Investment Management, LLC*,
   *et al.*, Case No. 10-CH-13264, Circuit Court of Cook County, Illinois ................................... 23

*Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914
   (S.D.N.Y. Jan. 12, 2007)........................................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 11, 13

**Statutes**

29 U.S.C § 216(b) ......................................................................................................................... 1

Fair Labor Standards Act ...................................................................................................... passim

Federal Rules of Civil Procedure 23 .................................................................................... passim

Federal Rules of Civil Procedure 54 ............................................................................................. 9

New York Labor Law §§ 195(1) and (3) ....................................................................................... 2

**Other Authorities**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)............... 10, 12, 15

*Manual for Complex Litigation* (3d ed.) ................................................................................... 12

## INTRODUCTION

Plaintiffs, Kyle Auffray and John Jenkins ("Plaintiffs"), and their counsel are pleased to present to the Court for preliminary approval a $300,000 settlement of a proposed class action brought on behalf of non-exempt players, head coaches, assistant coaches, cheerleaders, officials and administrative employees who submitted valid opt-in consent forms following this Court's Order granting Plaintiffs' motion for collective certification pursuant to 29 U.S.C § 216(b) and who played, coached or otherwise worked for any of the following FXFL, LLC ("FXFL")[1] teams during the 2014 season: 1) Boston Brawlers; or 2) Omaha Mammoths.  The proposed settlement also includes any non-exempt players, head coaches, assistant coaches, cheerleaders, officials and administrative employees who played, coached or otherwise worked for any FXFL New York based team during either the 2014 season or 2015 seasons. This includes: 1) Brooklyn Bolts (2014 and 2015 seasons); 2) Florida Blacktips (2014 and 2015 seasons); and 3) Hudson Valley Fort (2015 season only) (collectively with the 2014 season opt-ins, "Employees").[2]  As explained in the accompanying Declaration of Brett R. Gallaway (the "Gallaway Declaration"), Plaintiffs' claims arise under the Fair Labor Standards Act (the "FLSA") and related New York, Massachusetts Nebraska and Florida state labor laws (collectively, the "State Labor Law Claims").  Gallaway Declaration ¶ 7.  In principal part, Plaintiffs, along with the Employees, allege they were the subject of Defendants' improper wage policies.  For example, Employees were denied compensation (both minimum wage and overtime wages) for time worked during the 2014 and 2015 seasons.  Additionally, Defendants failed to pay Employees their contractually guaranteed wages and failed

---

[1]   Along with FXFL, defendants include Alan Pace ("Pace"), Brian Woods ("Woods") and Michael Halem ("Halem" and together with FXFL, Pace and Woods, collectively, "Defendants").

[2]   The Florida Blacktips, despite the team name, was a traveling team during the 2014 and 2015 seasons. During the 2014 and 2015 seasons, Employees from the Florida Blacktips were compensated from the home team's payroll which included New York based teams in both 2014 and 2015. Thus, all Employees from the Florida Blacktips during the 2014 and 2015 seasons are included in the Covered Positions as defined in the Settlement Agreement (defined below).

to reimburse Employees for their out-of-pocket expenses, which were incurred as a direct result of their employment by Defendants.  Finally, Defendants, in violation of New York Labor Law ("NYLL") §§ 195(1) and (3), failed to provide any Employee with required wage notices or paystubs.

Following extensive discovery efforts, substantial motion practice, four separate mediation sessions, three before Magistrate Judge Aaron and one before Magistrate Judge Ellis (Ret.), and subsequent extensive follow-up negotiations between counsel, Plaintiffs' Counsel secured a favorable settlement for the benefit of the Employees.  Specifically, Defendants will create a settlement fund of $100,000 to reimburse Employees the unpaid compensation they are owed by virtue of Defendants' improper pay policies.  The fund will provide a substantial, all-cash benefit for all Employees in settlement of a complex lawsuit burdened with significant litigation risks and obstacles.

This motion is the first step in the settlement approval process.  Specifically, Plaintiffs respectfully request that the Court: (1) conditionally certify the settlement class under Federal Rule of Civil Procedure 23(b)(3); (2) grant preliminary approval of the Stipulated Class Settlement Agreement ("Settlement Agreement") attached as Exhibit A to the Gallaway Declaration; (3) approve the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and Claim Form, attached as Exhibits B and C to the Gallaway Declaration; (4) approve a schedule for final settlement approval and set a date for the fairness hearing and related dates; and (5) appoint McLaughlin & Stern, LLP as Class Counsel ("Class Counsel").

## STATEMENT OF FACTS

### I.  Factual Background

The FXFL was a professional minor league football organization, which, in part, served as a "feeder" system for the National Football League ("NFL").  Gallaway Declaration ¶ 3.  In

October, 2014, the FXFL's first season commenced and consisted of four teams, the Brooklyn Bolts, the Boston Brawlers, the Omaha Mammoths and the Florida Blacktips.  *Id.* ¶ 4.  Prior to the start of the 2015 season, the Boston Brawlers folded and the Omaha Mammoths were replaced by the Hudson Valley Fort.  *Id.*  The second season, which included the Brooklyn Bolts, Florida Blacktips and Hudson Valley Fort, concluded in November, 2015.  *Id.*  Each season began with one to two weeks of training camp.  *Id.*  Training camp was followed by six weeks of mandatory daily practices, workouts, film sessions and games in 2014.  *Id.*  The 2015 season consisted of five weeks of mandatory daily practices, workouts, film sessions and games.  *Id.*  During the FXFL's existence, Defendants employed over 400 Employees, including, but not limited to, players, coaches, managers, officials, cheerleaders and other administrative Employees.  *Id.*

Defendant, Brian Woods, was the Commissioner, Chairman of the Board and the Chief Executive Office of the FXFL for both the 2014 and 2015 seasons.  Gallaway Declaration ¶ 3. Additionally, Woods drafted and implemented all FXFL Employee contracts and communicated directly with the Employees.  *Id.*  Defendant, Michael Halem, was FXFL's Chief Operations Officer, Chief Financial Officer, and sole manager on the Board of Managers for the FXFL until his resignation on November 3, 2014.  *Id.*  Halem held the additional position of Tax Matters Member until his resignation from that post on March 11, 2015.  *Id.*  Plaintiffs allege that the positions held by Halem allowed him to exercise control over Defendants' wage policies, work schedules, Employees' compensation and all other terms of employment.  *Id.*  Plaintiffs allege that Defendant, Alan Pace, was an FXFL Board member with input and control over financial decisions of the league, which affected all Employees.  *Id.*

Plaintiff, Kyle Auffray, was a player in the FXFL for the 2014 season and employed by Defendants.  Gallaway Declaration ¶ 5.  Defendants recruited Plaintiff, John Jenkins, to coach

during the 2014 and 2015 seasons.  *Id.*  Plaintiffs allege that Defendants violated the FLSA when they failed and/or refused to pay Plaintiffs and other Employees' regular and overtime wages. Additionally, Plaintiffs and Employees allege Defendants further violated the FLSA by failing or refusing to provide reimbursements for expenses incurred and which were guaranteed as a part of their contracts.  *Id.* ¶ 7.  Following this Court's approval of Plaintiffs' motion for collective certification, approximately 100 players, assistant coaches, cheerleaders, officials and other administrative employees opted in to participate in this litigation.  *Id.* ¶ 6.[3]

## II.   <u>Procedural History</u>

During this litigation, Class Counsel expended substantial time and effort prosecuting Plaintiffs' claims.  Among other things, Class Counsel conducted in-depth interviews of Plaintiffs and other Employees to determine whether they were paid by Defendants for time worked and whether they were reimbursed for out-of-pocket expenses as required by their contracts. Additionally, Class Counsel reviewed thousands of pages of documents produced by Defendants in response to multiple sets of discovery requests, including emails, contracts, wage records and bank statements relating to Defendants' policies and practices throughout the existence of the FXFL.  Further, Class Counsel engaged in numerous discovery disputes and "meet and confer" sessions with Defendants and Defendants' counsel in an effort to secure a more complete production of relevant documents.  Based on Defendants' request, Class Counsel also coordinated and responded to discovery requests for the approximately 100 opt-in Employees.  Additionally, Class Counsel defended depositions of two Named Plaintiffs and conducted four depositions of Defendants and their representatives.  Gallaway Declaration ¶ 9.

---

[3]   Plaintiffs agreed not to include head coaches in the collective class and, instead, are only pursuing head coaches' breach of contract claims.  *Id.*

Class Counsel also participated in significant motion practice before Your Honor.  Among other things, Class Counsel opposed Defendants' motion to dismiss and filed and briefed the motion for conditional certification.  Moreover, Class Counsel participated in numerous discovery motions and conferences before the Court.  Gallaway Declaration ¶ 10.

## III.   **The Settlement Fund and Plan of Allocation**

Pursuant to the Settlement Agreement, Defendants agree to pay the sum of $100,000.00 to Settlement Class Members (the "Settlement Amount") in full and final settlement of the Action, which they shall deposit into an interest-bearing escrow account held by Class Counsel (the "Escrow Account") within ten (10) business days after the Date of Preliminary Approval. Settlement Agreement § 4.1.  The Settlement Amount shall be paid as follows: $45,000.00 by Michael Halem; $40,000.00 by Brian Woods; and $15,000.00 by Alan Pace.  *Id.*  If the Settlement does not become Effective as defined above, any amounts paid into the Escrow Account shall be refunded to the Defendant who paid it.  *Id.*

The "Individual Settlement Amount" means the portion of the Settlement Amount distributable to each Qualified Claimant.  Settlement Agreement § 4.2.  This calculation shall be derived as follows:  The Settlement Administrator shall first determine the total number of Qualified Claimants who worked during the Covered Time Frames and who timely submitted Claim Forms.  *Id.*  The Settlement Administrator shall then pay each Qualified Claimant during the Covered Time Frames their Unpaid Recovery attributed to that Qualified Claimant as set forth in Section 1.20 of the Settlement Agreement.  *Id.*  If the sum total of the Individual Settlement Amounts of all Qualified Claimants is less than the Settlement Amount, the Settlement Administrator shall pay and increase each Qualified Claimant his or her Individual Settlement Amount on a pro rata share not to exceed $100,000.00.  *Id.*   If the sum total of all Qualified Claimants' Individual Settlement Amounts is greater than the Settlement Amount, the Settlement

Administrator shall decrease each Qualified Claimant's pro rata share of the Settlement Amount and pay each Qualified Claimant his or her pro rata share of the Settlement Amount not to exceed $100,000.00. *Id.*

The allocation of Individual Settlement Amounts is set forth in § 4.3 of the Settlement Agreement. Fifty percent of each Qualified Claimant's Individual Settlement Amount will be treated as back wages and subject to normal tax withholding and shall be reported to the taxing authorities on an IRS Form W-2. Settlement Agreement § 4.3. Fifty percent of each Qualified Claimant's Individual Settlement Amount will be treated as prejudgment interest and statutory non-wage payments on which there will be no tax withholding and for which an IRS Form 1099 (marked "Other Income") shall be issued if the payment is above the minimum threshold required for the issuance of a Form 1099. *Id.* Defendants make no warranty and have provided no advice regarding the tax treatment of payments. *Id.* The Settlement Administrator will make payments to Qualified Claimants for their allocable share of their Unpaid Recovery, minus all taxes owed to federal and state taxing authorities for both employer- and employee-side taxes. *Id.*

The above-described allocation formula seeks to fairly compensate Qualified Claimants for the compensation they were allegedly deprived of because of Defendants' policies. Thus, for example, a Qualified Claimant will be awarded their Individual Settlement Amount based upon the calculation provided above. Gallaway Declaration ¶ 15.

Plaintiffs' Counsel will separately petition the Court for $195,000 as payment of (i) attorneys' fees and reimbursement of litigation costs and expenses; and (ii) administration fees and notice expenses incurred by the Settlement Administrator not to exceed $20,000.00 (collectively the "Fee and Expense Award"). Settlement Agreement § 4.5. Halem shall have the right to contest the amount of the attorney's fees and litigation costs and expenses that Class Counsel may seek

before the Court.  *Id.*  Failure of the Court to award the Fee and Expense Award is not a ground to void the Agreement.  *Id.*  The Fee and Expense Award will be paid by Defendant Halem as awarded by the Court.  *Id.*  The Fee and Expense Award will be paid by Halem to Class Counsel within ten (10) calendar days of the Effective Date.  *Id.*

## IV.    <u>Releases</u>

The Settlement Agreement provides that Plaintiffs shall execute releases of all claims asserted in the lawsuit, or that could have been asserted in the lawsuit, and that each member of the Settlement Class who does not timely opt out of the settlement will release and forever release and discharge Defendants including their former and present parent companies, subsidiaries, divisions, concepts, representatives, attorneys, insurers, successors and assigns, and any individual or entity that could be jointly liable with any of the foregoing from all claims based on federal, New York, Massachusetts, Nebraska and Florida state laws governing overtime pay, wage payments, or hours worked that relate to the facts, acts, transactions, occurrences, events or omissions alleged in the Complaint or Second Amended Complaint.  Settlement Agreement §§ 5.1-5.2.  Additionally, Defendants on behalf of themselves, their present and former affiliates, subsidiaries and parent corporations, predecessors, successors and assigns, employees, attorneys and agents, release and forever and irrevocably discharge all claims, rights, causes of action, suits, matters and issues, whether known or unknown, concealed or hidden, suspected or unsuspected, that have been or could have been asserted against Class Representatives and their present and former agents, attorneys, accountants, counsel, brokers, and anyone actually or allegedly associated with Class Representatives or acting on their behalf, and all of them, from the beginning of time to the present which could have been alleged based on the facts in the Complaint or the Amended Complaint.  Settlement Agreement § 5.3.

V.     **Notice to Settlement Class**

The Settlement Agreement provides that within fourteen days after the Date of Preliminary Approval, the Parties shall provide to the Settlement Administrator information regarding all Settlement Class Members, including their last known address, telephone number (if available), Social Security Number, dates of employment and amount of uncompensated games in a Covered Position(s) during the Covered Time Frames.  Settlement Agreement § 6.2.  Within twenty-eight days after the Date of Preliminary Approval, the Settlement Administrator shall mail the Claim Form and Notice in the form approved by the Court to all Settlement Class Members.  *Id.* §§ 6.3-6.4.  The Settlement Administrator will take reasonable steps to ensure that the Notice and Claim Form are sent to all Settlement Class Members whose Notice is returned as undeliverable.  *Id.* § 6.4.  The Notice contains information about the nature of the lawsuit, attorneys' fees and expenses, the proposed service awards to class representatives, how Settlement Class Members can exclude themselves from the Settlement Class or object to the settlement via a Claim Form.  *Id.* §§ 6.1, 6.6, 6.7, 6.8 and Gallaway Declaration Exhibits B and C.  Each Claim Form will show the number of uncompensated games the Settlement Class Member worked in a Covered Position(s) during the Covered Time Frames along with the estimated amount of money that said Class Member will receive.  *Id.* § 6.5 and Gallaway Declaration Exhibit C.

The Settlement Administrator will take reasonable steps to ensure that the Notice and Claim Form are sent to all Settlement Class Members.  Settlement Agreement § 6.4.  Prior to mailing, the Settlement Administrator shall search a National Change of Address Database to confirm the current address for each Settlement Class Member.  *Id.*  If any envelopes are returned, the Settlement Administrator may use appropriate methods including but not limited to skip-trace to obtain the current addresses of the Settlement Class Members.  *Id.*  The Settlement Administrator will re-mail all notices that were returned by the postal service, and for which

additional addresses are known or obtainable, within five days.  *Id.*  Thirty days after the initial

mailing of Notice and Claim Form, the Settlement Administrator will mail to each Settlement

Class Member who has not responded with the return of a Claim Form or a request for exclusion,

a postcard to remind each such Settlement Class Member to submit a Claim Form before the

deadline in the form approved by the Court.  *Id.* § 6.9.

## VI.     Attorneys' Fees and Litigation Costs

At the Fairness Hearing, Class Counsel will separately petition the Court for $195,000 as

payment of (i) attorneys' fees and reimbursement of litigation costs and expenses; and (ii)

administration fees and notice expenses incurred by the Settlement Administrator not to exceed

$20,000.00.[4]  Settlement Agreement § 4.5.  The Court need not rule on fees and costs now.  Class

Counsel will file a formal motion for approval of fees and costs along with their motion for final

approval of the Settlement.  *See* Fed. R. Civ. P. 23(h) & 54(d)(2).

## VII.    Service Award for Class Representatives

In addition to their distribution under the Settlement, Plaintiffs will also seek a service

award on behalf of the two Class Representatives.  The service award, if any, awarded to the Class

Representatives as a service payment will be set by the Court, but the parties agree that the most

the Class Representatives will receive in service payments is $2,500 each.  Settlement Agreement

§ 4.4.  Defendant Halem will pay to the Settlement Administrator and not oppose Plaintiffs' request

for service payments up to $2,500.00 for each of the two Class Representative for an aggregate

---

[4]   Class Counsel recognizes that the future request for fees exceeds the Settlement Amount.  However, Class Counsel believes the requested amount is within the "reasonableness" standard of the FLSA, particularly given the extensive dispositive and discovery motion practice in this case.  These motions resulted in numerous conferences and oral arguments before the Court and resulted in Class Counsel expending significant time and resources in prosecuting this case.  Additionally, the requested fees and expenses will be fully addressed in connection with Plaintiffs' application for fees and expenses submitted in advance of the final fairness hearing, where it will be shown that Plaintiffs' Counsel's lodestar far exceeds the requested fee and expenses.

sum of $5,000.00.  *Id.*  The amount awarded by the Court will be paid by the Settlement

Administrator within ten (10) days after the Effective Date.  *Id.*  The Settlement Administrator will

issue an IRS Form 1099 to the Class Representatives with regard to the service payments and all

taxes on these payments shall be the sole responsibility of the Class Representatives.  *Id.*

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval

in class action settlements that include three distinct steps: (1) preliminary approval of the

proposed settlement after submission to the Court of a written motion for preliminary approval

and conditional certification of the Settlement Class; (2) dissemination of notice of Settlement to

all affected Settlement Class Members; and (3) a final settlement hearing at which Settlement Class

Members may be heard regarding the Settlement, and at which argument concerning the fairness,

adequacy, and reasonableness of the Settlement may be presented, and the Court may finally

certify the Settlement Class.  *See* Fed R. Civ. P.23(e); *see also* Herbert B. Newberg & Alba Conte,

*Newberg on Class Actions* ("Newberg") §§ 11.22 *et seq.* (4th ed. 2002).  This process safeguards

Settlement Class Members' procedural due process rights and enables the Court to fulfill its role

as the guardian of class interests.  With this motion, Plaintiff requests that the Court take the first

step – granting preliminary approval of the Settlement Agreement, conditionally certifying the

Settlement Class, appointing Plaintiffs' counsel as Class Counsel, and approving the Notice and

authorizing the Settlement Administrator to send it.

The parties respectfully submit the following proposed schedule for the Court's

consideration and approval:

1.  Within 14 days following the Date of Preliminary Approval, Defendants will

provide the Settlement Administrator information regarding the Settlement

Class Members, including their last known address, telephone number (if

available), Social Security Number, dates of employment and amount of uncompensated games in a Covered Position(s) during the Covered Time Frames.  Settlement Agreement § 6.2.

2. Within 28 days after the Date of Preliminary Approval, the Settlement Administrator will mail the Court-approved Notice and Claim Form to the Settlement Class Members.  Settlement Agreement § 6.3.

3. Settlement Class Members will have 60 calendar days after the date the Claim Forms are mailed to provide timely and complete Claim Form or request for exclusion via U.S. first class mail to the Settlement Administrator.  Settlement Agreement § 6.6.

4. Settlement Class Members will have 30 calendar days from the date Claim Forms are mailed to object to the Settlement.  Settlement Agreement § 6.7.

5. Class Counsel will file a Motion for Judgment and Final Approval of Settlement ("Motion for Final Approval") before the Fairness Hearing.  Settlement Agreement § 9.1.

6. If the Court grants Plaintiffs' Motion for Final Approval, the Court will enter Judgment in accordance with the Settlement Agreement and dismiss the case with prejudice.  Settlement Agreement §§ 3.1(e) and 3.1(f).

## ARGUMENT

## I.   Standards for Preliminary Approval

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an

overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F. 3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation…" *Id.* (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Id.* (citing *Newberg* § 11.25). To grant preliminary approval, the court need only find that there is ""probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (*quoting Manual for Complex Litigation* (3d ed.) § 30.41).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery." *Wal-Mart Stores,* 396 F.3d at 116 (internal quotation marks omitted).  If

the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent

fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties

who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL

2230177 at *4 (S.D.N.Y. 2007).

 Preliminary approval is the first step in the settlement process.  It simply allows notice to

issue and for class members to object or opt out of the Settlement.  After the notice period, the

Court will be able to evaluate the Settlement with the benefit of the Settlement Class Members'

input.

## II. The Settlement Falls Within the Range of Reasonableness

 At the preliminary approval stage, the court only needs to decide if the proposed settlement

"fits within the range of possible approval."  *In re State Street Bank And Trust Co. ERISA*

*Litigation*, 2009 WL 3458705 (S.D.N.Y. 2009); *citing In re Prudential Securities Inc. Ltd.*

*Partnerships*, 163 F.R.D. 200, 209-210 (S.D.N.Y. 1995).  In other words, because the court cannot

fully assess a settlement prior to providing class members notice of the settlement and the

opportunity to present objections, the court's first-stage analysis consists of a review for "obvious

deficiencies."  *In re Prudential Securities Inc. Ltd. Partnerships*, 163 F.R.D. at 200, 209-210

(S.D.N.Y. 1995).  This is a modest standard:

> If the preliminary evaluation of the proposed settlement does not
> disclose grounds to doubt its fairness or other obvious deficiencies,
> such as unduly preferential treatment of class representatives…or
> excessive compensation for attorneys, and appears to fall within the
> range of possibly approval, the court should direct that notice under
> Rule 23(e) be given to the class members of a formal fairness
> hearing, at which arguments and evidence may be presented in
> support of and in opposition to the settlement. *Id.*

The proposed Settlement in this case was the result of good faith and at arm's-length negotiations.  Gallaway Declaration ¶ 11.  As noted above, the substantial discovery and motion practice in this case allowed Class Counsel – who are experienced class action and employment attorneys – to sufficiently assess the strengths and weaknesses of the claims against Defendants and weigh the benefits of the proposed Settlement, which will provide significant cash compensation to the Settlement Class Members.  Gallaway Declaration ¶ 8.  Moreover, Class Counsel will request no more than $195,000 exclusive of the Settlement Amount, which Class Counsel contends is reasonable given the significant efforts expended in prosecuting this action. Settlement Agreement § 4.5; *See Rojas v. Bronx Moon LLC*, U.S. Dist. LEXIS 175446, at *9 (S.D.N.Y. Oct. 10, 2018) ("Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees.")  For these reasons, Plaintiffs respectfully submit that preliminary approval of the Settlement is warranted and appropriate.

III.  **Conditional Certification of the Rule 23 Settlement Class Is Appropriate**

For settlement purposes, Plaintiff seeks to certify the following Settlement Class under Federal Rule of Civil Procedure 23(a) and 23(b)(3):

All former players, head coaches, assistant coaches, cheerleaders, officials and administrative employees who were employed by FXFL during the "Covered Time Frames."  The Covered Time Frames are explained below.

| If you were employed as a player, head coach, assistant coach, cheerleader, game official or administrative employee and previously filed a written consent to opt into this action for: | Your Covered Time Frame is: |
| --- | --- |
| Boston Brawlers | September 1, 2014 through November 30, 2014 |
| Omaha Mammoths | September 1, 2014 through November 30, 2014 |

| Blacktips (for games not played in New York) | September 1, 2014 through November 30, 2014 |
|---|---|
| **If you were employed as a player, head coach, assistant coach, cheerleader, game official or administrative employee, regardless of whether you previously filed a written consent to opt into this action for:** | **Your Covered Time Frame is:** |
| Brooklyn Bolts | September 1, 2014 through November 30, 2014; and September 1, 2015 through November 30, 2015 |
| Blacktips (for games played by the Blacktips in New York) | September 1, 2014 through November 30, 2014; and September 1, 2015 through November 30, 2015 |
| Hudson Valley Fort | September 1, 2015 through November 30, 2015 |

Settlement Agreement §§ 1.8, 1.9, 1.15, 1.17 and 1.18 Gallaway Declaration Exhibit B.

Significantly, Defendants do not dispute for settlement purposes that the Settlement Class meets the requirements for class certification. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.")

Conditional Rule 23 class certification for settlement purposes and appointment of class counsel have "several practical purposes, including avoiding costs of litigation class action status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement and setting the date and time of the final approval hearing." *Palacio v. E*TRADE Fin. Corp.*, 2012 U.S. Dist. LEXIS 41886, at *4 (S.D.N.Y. Mar. 12, 2012). Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

15

class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) also requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  In this case, all of the foregoing criteria are satisfied.

### A. <u>Numerosity</u>

"'[N]umerosity is presumed at a level of 40 members.'"  *Duling v. Gristede's Operating Corp.*, 2012 U.S. Dist. LEXIS 164226 (S.D.N.Y. Nov. 15, 2012).  Here, there are approximately 250 members of the Settlement Class, easily satisfying the requirement of numerosity.  Gallaway Declaration ¶ 15.

### B. <u>Commonality</u>

Commonality asks "whether the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falvon,* 457 U.S. 147, 157 n.13 (1982).  Here, there are numerous questions of fact and law that are common to members of the Settlement Class, including: (i) whether Defendants failed and/or refused to pay Plaintiffs and Settlement Class Members for all the compensable time they worked; (ii) whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and Settlement Class Members; (iii) whether Defendants correctly compensated Plaintiffs and Settlement Class Members for all overtime pay to which they were entitled at time and one-half their regular rate of pay for all hours worked over forty in a week; (iv) whether Defendants acted willfully or in reckless disregard of applicable law; (v) whether Defendants engaged in a pattern and/or practice of forcing, coercing and/or permitting Plaintiffs and Settlement Class Members to perform work for Defendants' benefit which was not

16

compensated; and (vi) the nature and extent of class-wide injury and appropriate damages.  *See* Second Amended Complaint (Docket No. 144).  As such, commonality is easily met in this case.

### C. **Typicality**

Federal Rule 23 requires that the claims of the class representatives be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (internal quotation marks omitted).

In this case, Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of other Settlement Class Members' claims.  Similar to other members of the Settlement Class, Plaintiffs allege that Defendants routinely failed to compensate them for the work they performed.  Second Amended Complaint (Docket No. 144).  Additionally, like other members of the Settlement Class, Plaintiffs allege that they were denied proper overtime compensation for time worked over forty in a given week. *Id.*  Also, like other members of the Settlement Class, Plaintiffs allege that Defendants failed to reimburse them for out-of-pocket expenses as Defendants agreed to do. *Id.*  Further, Plaintiffs, like Settlement Class Members, allege that Defendants engaged in a pattern and/or practice of forcing, coercing and/or permitting Plaintiffs and members of the

Settlement Class to perform work for Defendants' benefit without compensation.  *Id.*  Finally, Plaintiffs, like other members of the Settlement Class, allege that Defendants failed to keep true and accurate time records.  *Id.*  Thus, since Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Settlement Class Members' claims, the typicality requirement is satisfied.  *See Khait v. Whirlpool Corporation*, 2009 U.S. Dist. LEXIS 114817, at *6 (E.D.N.Y. Oct. 2, 2009).

### D.  <u>Adequacy of the Named Plaintiffs</u>

Federal Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and…have no interests antagonistic to the interests of other class members.""  *Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sep. 28, 2007) (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y.  May 29, 2007) (internal quotation marks omitted).

In this case, Plaintiffs' interests are directly aligned with those of the other Settlement Class Members as they possess and have prosecuted the same claims arising from the same set of facts and circumstances.  Moreover, Plaintiffs and their counsel have aggressively litigated this case since its inception.  Plaintiffs worked with their counsel on pre-litigation discovery, drafting and filing the Complaint and Amended Complaints, serving discovery requests, responding to discovery requests, interviewing Settlement Class Members, reviewing extensive amounts of documents and taking Defendants' depositions.  Plaintiffs also each appeared for a deposition and Plaintiffs' Counsel defended a motion to dismiss; prepared and filed a motion for conditional

certification; participated in significant motion practice, including multiple arguments and appearances before the Court; and engaged in hard-fought settlement negotiations, including multiple mediation sessions before Magistrate Judges Aaron and Ellis, and several weeks of additional arm's length settlement negotiations between counsel for all parties.  Gallaway Declaration ¶¶ 9-11.  For these reasons, it is clear that Plaintiffs have fairly and adequately protected the Settlement Class Members' interests, thus satisfying the adequacy requirement.

### E.  Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

#### 1.  Common Questions Predominate

To satisfy Federal Rule 23(b)(3), Plaintiffs must show that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Marriott v. Cnty. Of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (internal quotation marks omitted).  Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'"  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (*quoting In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)).  Where plaintiff and potential class members are "unified by a common legal theory" and by

common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

In this case, the central issues are whether Defendants failed and/or refused to pay Plaintiffs and Settlement Class Members for all the compensable time they worked; whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and Settlement Class Members; whether Defendants correctly compensated Plaintiffs and Settlement Class Members for all overtime pay to which they were entitled at time and one-half their regular rate of pay for all hours worked over forty in a week; whether Defendants acted willfully or in reckless disregard of applicable law; and whether Defendants engaged in a pattern and/or practice of forcing, coercing and/or permitting Plaintiffs and Settlement Class Members to perform work for Defendants' benefit which was not compensated. Every one of these issues applies equally to every member of the Settlement Class and is the basis upon which Defendants' liability would, or would not, be established if the action were litigated through trial. *See Cruz v. Hook-Superx, LLC*, 2010 U.S. Dist. LEXIS 81021, at *14 (S.D.N.Y. Aug. 5, 2010) ("Plaintiffs' allegation is simple and identical across all claims: Defendants have misclassified employees to escape overtime wage obligations."); *Clark*, U.S. Dist. LEXIS 108736, at *19 (common factual allegations and common legal theory predominated over factual and legal variations among class members in settlement of wage and hour misclassification case). Accordingly, the element of predominance exists here.

## 2. A Class Action Is Superior Mechanism

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

20

Federal Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the superiority inquiry, including: class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

 The Settlement Class Members in this case have limited financial resources with which to prosecute individual actions.  Moreover, concentrating the litigation in this Court is desirable because the majority of the FXFL games were played in this jurisdiction and it was in this jurisdiction that the majority of the Settlement Class Members were subjected to Defendants' allegedly wrongful conduct.  Gallaway Declaration ¶ 6.  For example, the Florida Blacktips was a traveling team during the 2014 and 2015 Seasons and during those seasons Employees from the Florida Blacktips were compensated from the home team's payroll, which included New York based teams.  *Id.*  Likewise, in 2015 all of the FXFL's teams were based in New York.  *Id.*  As such, more Settlement Class Members worked for Defendants and were subjected to Defendants' allegedly improper conduct in the Southern District of New York that in any other district in the United States.  Additionally, the FXFL headquarters were in New York City and all decision-making for the league took place in this jurisdiction.

 Moreover, employing the class device will not only achieve economies of scale, but will conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 52713, at *6 (S.D.N.Y. May 17, 2011) (class adjudication conserves judicial resources); *Damassia v.*

*Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).  Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the claims asserted in this action.

## IV.   Plaintiffs' Counsel Should Be Appointed Class Counsel

The attorneys representing Plaintiffs, McLaughlin & Stern LLP, should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed R. Civ. P. 23(g)(1)(B).  The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case."  Fed. R. Civ. P. 23(g) Advisory Committee's note.

Plaintiffs' Counsel meet all of these criteria.  As set forth in the accompanying Gallaway Declaration, Plaintiffs' Counsel have performed substantial work identifying, investigating, analyzing, prosecuting, and settling Plaintiffs' and Settlement Class Members' claims.  Gallaway Declaration ¶¶ 20-24.  Additionally, Plaintiffs' Counsel has substantial experience prosecuting and settling class actions, including wage and hour class actions, and the attorneys assigned to this matter are well-versed in wage and hour and class action law and are well-qualified to represent the interests of the class.  *Id.*  Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in similar class actions.

The Senior Partner overseeing this matter, Lee S. Shalov, has handled complex class actions for over 30 years, including wage and hour class actions, securities class actions and

consumer class actions.   His efforts have generated tens of millions of dollars in recoveries for aggrieved employees, investors and consumers nationwide.[5]   As a result, Plaintiffs' Counsel is clearly qualified to be Class Counsel.

## V.   The Notice Plan Is Appropriate

### A.   The Notice Plan Satisfies Due Process

The Notice, attached to the Gallaway Declaration as Exhibit A, fully complies with due process, Federal Rule of Civil Procedure 23 and the FLSA.   Notice to potential FLSA opt-ins should be "timely, accurate, and informative."   *Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).   Pursuant to Rule 23(c)(2)(B), the notice must provide:

> The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.   The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members.

---

[5]   *Tradex Global Master Fund SPC Ltd. et al. v. Lancelot Investment Management, LLC, et al.*, Case No. 10-CH-13264, Circuit Court of Cook County, Illinois (obtained a $27.5 million settlement for investors in a Ponzi scheme feeder fund); *Ramirez v. Riverbay Corp.*, Index No.: 13-cv-2367 (S.D.N.Y.) (obtained a $6.25 million settlement as counsel for over 1,700 employees who were not compensated for work performed before and after scheduled shifts and wrongfully paid compensatory time rather than overtime cash payments); *Siewharack v. Queens Long Island Medical Group, P.C.*, Index No.: 11-cv-3603 (E.D.N.Y) (obtained $2.45 million settlement for employees of medical company who were not compensated for time worked); *Ludwig v. Pret A Manger*, Index No.: 11-cv-5677 (S.D.N.Y.) (obtained $299,000 settlement for misclassified managers in training); *Marshall v. Deutsche Post DHL Express (USA) Inc.*, Index No.: 13-cv-1471 (S.D.N.Y.) (obtained a $1.5 million settlement as class counsel in a wage and hour class action on behalf of DHL clearance agents in New York, California and Florida); and *Terrana v. JCPenney*, Index No.: 13-cv-0460 (S.D.N.Y.) (obtained a $750,000 settlement in a wage and hour class action on behalf of non-exempt hourly employees of JCPenney in New York); *Gray v. Hydroxatone LLC et al.*, Index No.:2:11-cv-04586, U.S. Dist. Court, Dist. Of New Jersey (obtained a $3 million settlement for consumers who were improperly charged for "free trial" products; *Duckworth, et al v. Country Life Insurance Company, et al.*, Case No. 98-CH-01046, Circuit Court of Cook County, Illinois (obtained a $44 million settlement for life insurance customers in deceptive sales practices case); *Snyder v. Nationwide Mutual Insurance Company, et al.*, Index No. 33-97-0494, Supreme Court of the State of New York (obtained a $100 million settlement for life insurance customers in deceptive sales practices case).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice satisfies these requirements.  Among other things, it: (i) describes the definition of the Settlement Class, the terms of the Settlement and the nature of the case; (ii) informs the Settlement Class about counsels' request for attorneys' fees and expenses and Class Representatives' service awards; (iii) instructs Settlement Class Members how to object to the Settlement or exclude themselves from the Settlement via an Opt-Out Request; (iv) explains how settlement funds will be allocated to Settlement Class Members; and (v) includes an explanation of each Settlement Class Member's right to make a claim by opting in to the Settlement via a Claim Form.   Settlement Agreement §§ 6.2-6.9, and Gallaway Declaration Exhibit B. Accordingly, the detailed information in the Notice is more than adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B) and the FLSA.  Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Proposed Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B) and the FLSA.

**B.   The Notice Plan and Award Distribution Process Are Appropriate**

The Settlement Agreement provides that notice will be mailed to the last known home address of each Settlement Class Member within 28 days of this Court's Order Granting Preliminary Approval.   Settlement Agreement §§ 6.2-6.4.   Prior to mailing, the Settlement Administrator shall search a National Change of Address Database to confirm the current address for each Settlement Class Member and the Settlement Administrator will take reasonable steps to obtain the correct home address of any Settlement Class Member whose notice is returned by the post office as undeliverable. *Id*.  If any envelopes are returned, the Settlement Administrator may

use appropriate methods including but not limited to one skip-trace to obtain current addresses of the Settlement Class Members.  *Id.*  The Settlement Administrator will re-mail all notices that were returned by the postal service, and for which additional addresses are known or obtainable, within five days.  *Id.*

The Notice informs Settlement Class Members that they will need to file a Claim Form and sign a release in order to receive a distribution from the Settlement and that, unless they opt-out, they are releasing their claims regardless of whether they file a claim form and release.  Settlement Agreement §§ 6.7-6.9 and Gallaway Declaration Exhibits A-B.  Settlement Class Members will have 60 calendar days from the date of the mailing to submit the completed Claim Form via U.S. first class mail to the Settlement Administrator.  *Id.*  In addition, 30 days after the initial mailing of the Notice and Claim Form, the Settlement Administrator will send to each Settlement Class Member who has not responded with the return of a Claim Form or a request for exclusion, a postcard to remind each such Settlement Class Member of his/her option to submit a Claim Form in the form approved by the Court before the deadline.  *Id.*  By virtue of these procedures, the Settlement attempts to reach all members of the Settlement Class to inform them of the Settlement and to allow them the opportunity to share in the Settlement proceeds, or opt out, or file an objection.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class; (2) grant preliminary approval of the Settlement Agreement; (3) approve the proposed Notice, Claim Form, and plan of distribution; (4) approve Plaintiffs' proposed schedule for final settlement approval and set a date for the Fairness Hearing and related dates; and (5) appoint Plaintiffs' Counsel as Class Counsel.

Dated: January 15, 2019
     New York, New York

Respectfully Submitted,

By:   /s/

Lee S. Shalov, Esq.
Brett R. Gallaway, Esq.
Wade C. Wilkinson, Esq.
**McLaughlin & Stern, L.L.P.**
260 Madison Avenue, 17th Floor
New York, NY 10016
Telephone: (212) 448-1100

*Attorneys for the Plaintiffs and the Settlement Class*