UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYLE AUFFRAY and JOHN JENKINS on behalf of
themselves and all others similarly situated,

           Plaintiffs,

v.

FXFL, LLC, BRIAN WOODS, ALAN PACE, and
MICHAEL HALEM

           Defendants.

Index No.: 1:15-cv-9379 (GHW)(SDA)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

Brett R. Gallaway
Lee S. Shalov
McLaughlin & Stern, LLP
260 Madison Avenue, 17ᵗʰ floor
New York, NY 10016
(212) 448-1100

*Counsel for Plaintiffs and the
Settlement Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................................i-ii

1.    INTRODUCTION .................................................................................................................. 1

2.    FACTUAL AND PROCEDURAL BACKGROUND........................................................... 2

      a.    Nature of Plaintiffs' Claims...................................................................................... 2

      b.    Motion Practice, Discovery and Mediation ............................................................. 2

3.    THE SETTLEMENT SHOULD BE APPROVED BY THE COURT............................... 5

4.    SUMMARY OF SETTLEMENT TERMS, THE CLASS'S REACITON
      AND DISTRIBUTION PLAN ........................................................................................... 8

5.    ARGUMENT..................................................................................................................... 10

      a.    Approval of Class Action Settlements Under Rule 23 .......................................... 10

      b.    The Settlement is Procedurally Fair...................................................................... 10

      c.    The Settlement is Substantively Fair .................................................................... 11

            1.    Litigation Through Trial Would be Complex, Costly, and Long
                  (*Grinnell* Factor 1) ................................................................................... 12

            2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 12

            3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve
                  the Case Responsibly (Grinnell Factor 3)................................................. 14

            4.    Plaintiffs Would Face Risks if the Case Proceeded (*Grinnell* Factors
                  4 and 5) ....................................................................................................... 15

            5.    Risks Involved in Maintaining the Class Through Trial
                  (*Grinnell* Factor 6) ................................................................................... 15

            6.    Defendants' Inability to Withstand a Greater Judgment Supports
                  the Fairness of the Settlement (*Grinnell* Factor 7).................................... 16

|  | 7. | The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) | 17 |
|--|----|----|----|
|  | d. | The Plan of Allocation is Fair, Reasonable and Adequate | 19 |

CONCLUSION .............................................................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................. 6, 10

*American Banknote Holographics,* 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................... 19

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................ 12, 18

*Banyai v. Mazur*, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ...................................................... 17

*Bellifemine v Sanofi-Aventis U.S. LLC*, 2010 US Dist LEXIS 79679 (S.D.N.Y. 2010) ........ 13, 16

*Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................. 19

*Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) .............................. 16

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................. *passim*

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................... 7, 11, 12

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200
(S.D.N.Y. Jan. 21, 2011) ................................................................................................................. 14

*Easterly v. Tri-Star Transp. Corp.*, 2014 U.S. Dist. LEXIS 180999, (S.D.N.Y. Jan. 23, 2015) .... 4

*Frank v Eastman Kodak Co.*, 228 FRD 174 (W.D.N.Y. 2005) ..................................................... 19

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................................. 11

*Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) .................................................................... 15

*Joel A. v. Giuliani*, 218 F.3d 132 (2nd Cir. 2000) ......................................................................... 6

*Lloyd v J.P. Morgan Chase & Co.*, 2015 US Dist LEXIS 35161 (SDNY Mar. 20, 2015) ............ 4

*Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011) ........................................................ 4

NASDAQ Mkt–Makers Antitrust Litig., 187 F.R.D. 465 (S.D.N.Y.1998) ................................... 16

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ............................................................................. 19

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615
(9th Cir. 1982) ................................................................................................................................ 19

*Torres v. Gristede's Operating Corp.*, 519 F. App'x 1 (2d Cir. 2013)............................................. 4

*Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..................... 15

*Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003)....................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96 (2d Cir. 2005)............ 6, 7, 10, 11

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ................................................... 14

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)..................................................................... 6, 10

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................... 14

## STATUTES

§ 137- 1.2 ...................................................................................................................................... 1

§ NYCRR § 137-1.3 ...................................................................................................................... 1

29 U.S.C. 206................................................................................................................................. 1

29 U.S.C. 207................................................................................................................................. 1

29 U.S.C 216(b) ........................................................................................................................ 4, 16

Fed. R. Civ. P. 23.............................................................................................................. 6, 10, 16

Fed. R. Civ. P. 23(b)(3)................................................................................................................. 5

Fed. R. Civ. P. 23(e) ........................................................................................................... 5, 6, 10

Fed. R. Civ. P. 23(e)(2)......................................................................................................... 6, 10

New York Labor Law § 190 et seq................................................................................................ 1

New York Labor Law § 633. .......................................................................................................... 1

New York Labor Law § 650 et seq................................................................................................ 1

ii

## 1.    INTRODUCTION

In connection with Plaintiffs' Motion for Final Approval of the Class Action Settlement ("Motion for Final Approval"), McLaughlin and Stern, LLP, as Class Counsel, make this application for an Order seeking final approval of the settlement of this action. A copy of the Proposed Final Order is annexed to the August 15, 2019 Declaration of Brett R. Gallaway In Support of Final Approval of Class Action Settlement and Class Counsel's Request for Attorney's Fees and Costs ("Gallaway Decl.") as Exhibit "E". The parties have agreed to a Settlement that provides monetary relief totaling $100,000 for Class Members plus additional money to cover attorney fees and costs. The parties' Settlement, embodied in the Settlement Agreement, easily satisfies the "fair, reasonable, and adequate" standard for final approval.[1] *See* Federal Rule of Civil Procedure ("FRCP") 23(e).

This action was brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207 and 216(b), New York Labor Law § 190 et seq., New York Labor Law §§ 633 and 650 et seq.; 12 New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") §§ 137-1.2 and 12 NYCRR § 137-1.3 along with related Massachusetts, Nebraska and Florida state labor law claims, to recover unpaid minimum wages and overtime compensation, owed to Kyle Auffray and John Jenkins (hereinafter referred to as the "Plaintiffs"), and all similarly situated persons who are presently or were formerly employed by Defendants FXFL, LLC. ("FXFL"), Brian Woods ("Woods"), Michael Halem ("Halem") and Alan Pace ("Pace" and collectively with FXFL, Woods and Halem as "Defendants").

---

[1]    Capitalized terms in this memorandum have the same meaning as in the parties' Settlement Agreement. Dkt. No. 348-1.

Class Members have responded overwhelmingly favorably to the Settlement thus far. No opt-outs have been filed to date and no objections were filed during (or after) the Opt-Out Period which ended on August 5, 2019. *See* Gallaway Decl., ¶¶ 40-41. Class Counsel, who are experienced in litigating federal and state wage and hour class action cases, firmly believe that this proposed Settlement is in the best interest of the Settlement Class, and that the response of the Qualified Claimants to date underscores that fact.

## 2.    FACTUAL AND PROCEDURAL BACKGROUND

### a.    Nature of Plaintiffs' Claims

A full recitation of Plaintiffs' claims and the procedural background of this matter can be found in Plaintiffs' memorandum in support of preliminary approval ("Plaintiffs' Preliminary Approval Motion"). Dkt. No. 336. In brief, the FXFL was a professional minor league football organization, which, in part, served as a "feeder" system for the National Football League ("NFL"). Plaintiffs and Class Members were employed in Covered Positions in 2014 and 2015, but were not compensated for all games and weeks worked during this timeframe. *Id.* Additionally, Named Plaintiffs and Class Members allege that they were required to pay unreimbursed expenses for travel, lodging, meals and other associated work-related requirements. *See generally* Dkt. No. 14.

### b.    Motion Practice, Discovery and Mediation

Plaintiffs have been forced to extensively litigate this action and compile class discovery on their own due do Defendants' aggressive litigation tactics and lack of any formal recordkeeping. The action was commenced by Named Plaintiffs on November 30, 2015. *See* Dkt. No. 1. The original Complaint named 3 Defendants: FXFL, Pace and Woods. Plaintiffs were forced to move, twice, by Order to Show Cause for a default judgment against FXFL after counsel for Woods and FXFL withdrew and FXFL failed to obtain new counsel. *See* Dkt. Nos. 35 & 46. On June 2, 2016,

{N0024184.1}                                                    2

the Court ordered that FXFL was in default. *See* Dkt. No. 46. Since then, Woods has been proceeding in this action *pro* se. After initial discovery was produced to Plaintiffs, it was apparent that an additional party, Halem, should be added as a Defendant. On July 27, 2016, Plaintiffs filed a motion to amend the original Complaint to add Halem as a Defendant. *See* Dkt. Nos. 62-64. Halem then moved to dismiss Plaintiffs' Second Amended Complaint, which the Court denied on February 27, 2017. *See* Dkt. No. 162. Since the addition of Halem, Defendants have aggressively defended and litigated this matter, resulting in no less than **36 letters** (*see* Dkt. Nos. 20, 72, 75, 76, 77, 89, 99, 108, 112, 120, 129, 130, 131, 132, 137, 172, 174, 176, 212, 229, 249, 251, 267, 309, 311, 313, 316, 339, 341, 344, 346, 348, 349, 355); **94 letter motions and memorandum of law** (*see* Dkt. Nos. 26, 36, 48, 55, 56, 62, 63, 67, 69, 73, 74, 79, 82, 85, 88, 92, 95, 97, 106, 116, 124, 128, 134, 135, 138, 140, 142, 145, 147, 148, 150, 152, 154, 156, 157, 159, 163, 167, 169, 173, 175, 177, 178, 179, 181, 182, 186, 188, 191, 195, 196, 200, 201, 204, 208, 210, 214, 215, 217, 220, 238, 242, 244, 253, 254, 264, 272, 281, 282, 285, 287, 289, 291, 293, 294, 296, 297, 298, 302, 304, 312, 314, 321, 323, 325, 327, 329, 332, 333, 335, 336, 342, 353, 356); **108 orders** (*see* Dkt. Nos. 7, 22, 30, 31, 35, 37, 46, 47, 50, 54, 66, 68, 71, 78, 80, 90, 91, 96, 101, 107, 109, 113, 121, 126, 127, 141, 143, 149, 151, 155, 158, 160, 162, 164, 171, 180, 185, 189, 190, 198, 203, 205, 209, 211, 216, 225, 240, 243, 246, 248, 252, 256, 265, 271, 276, 279, 286, 290, 292, 295, 299, 301, 303, 307, 308, 310, 315, 317, 318, 319, 322, 324, 326, 328, 330, 334, 338, 340, 343, 345, 347, 351, 352); and at least **16 telephonic hearings** and **9 in-person hearings and conferences** with the Court. *See* (Minute Entries dated: 02/25/2016; 05/20/2016; 07/19/2016; 09/26/2016; 11/28/2016; 12/07/2016; 02/27/2017; 03/27/2017; 07/25/2017; 07/31/2017; 08/14/2017; 01/08/2018; 01/11/2018; 01/23/2019; 05/29/2019; 07/31/2019 and 01/27/2016;

10/27/2016; 11/16/2016; 11/09/2017; 11/27/2017; 05/10/2018; 06/25/2018; 08/09/2018; 10/01/2018).

Additionally, Plaintiffs moved for, and Defendants' opposed collective certification pursuant to 29 U.S.C 216(b) which the Court granted on August 14, 2017. *See* Dkt. No. 248. Furthermore, Defendants demanded and the Court ordered that Plaintiffs provide discovery responses for over 100 opt-in collective class members. *See* Dkt. No. 279.[2] Plaintiffs complied with this order and also produced both Named Plaintiffs for depositions and conducted 4 depositions of all Defendants and the FXFL's former CPA. *See* Gallaway Decl., ¶¶ 5-14.

Plaintiffs also reviewed through thousands of pages of unorganized payroll documentation and hired the services of experienced and highly accomplished expert statisticians, Gettry Marcus, CPA, to assist with class-wide damage calculations. *See Id.*, ¶ 6. Following extensive discovery efforts and substantial motion practice, Plaintiffs participated in four separate mediation sessions, three before Magistrate Judge Aaron and one before Magistrate Judge Ellis (Ret.), and subsequent extensive follow-up negotiations between counsel. *See Id.*, ¶ 6. This resulted in Class Counsel securing a favorable $100,000 non-revisionary settlement for the benefit of the Class Members. *Id.* Plaintiffs then submitted and the Court granted Plaintiffs' Preliminary Approval Motion on

---

[2]     Ironically, the case that Defendants primarily relied upon to obtain this voluminous amount of discovery, *Lloyd v J.P. Morgan Chase & Co.*, 2015 US Dist LEXIS 35161 (SDNY Mar. 20, 2015), states that "any burden here is mitigated by the FLSA's fee-shifting provisions, *see Easterly v. Tri-Star Transp. Corp.*, 2014 U.S. Dist. LEXIS 180999, (S.D.N.Y. Jan. 23, 2015), which permit recovery of reasonable attorneys' fees, even if those fees are disproportionate to any amounts actually recovered by plaintiffs. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011); *accord Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013) (summary order). Thus, unless defendants prevail, defendants will ultimately bear the cost of any burden they create." Therefore, any anticipated argument from Defendants that Class Counsel are not entitled to the full $195,000 recovery of fees and costs that they simultaneous seek via separate application, is belied by their own bullish and overwhelming litigation tactics in this action.

May 9, 2019. *See* Dkt. No. 352. Even after the parties signed and submitted the Settlement Agreement and obtained preliminary approval from the Court, Class Counsel has still had to engage in subsequent motion practice and hearings related to Woods' failure to abide by the agreed upon settlement payment timeline. *See* Dkt. Nos. 353-358. Needless to say, obtaining this result for Class Members has been no easy or uncontested feat.

However, the discovery, investigations, interviews, analysis and settlement negotiations allowed the parties to evaluate the merits of their respective claims and defenses. The settlement was the product of fully-informed parties negotiating at arm's length, and provides a fair and reasonable resolution of the litigation, especially given the risks faced by each party at trial and in potential appeals.

## 3.    THE SETTLEMENT SHOULD BE APPROVED BY THE COURT

Federal Rule of Civil Procedure 23(e) sets out the following requirements for court-approved settlement of a class action:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

{N0024184.1}                                                 5

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

When approving a class action settlement, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). The settlement here is clearly fair as it is based upon 1-week of unpaid games worked by each Class Member. If there is 100% participation, the Settlement would represent a 50% return of the compensatory damages owed. However, given the claims made, non-reversionary structure of the settlement, this amount may increase significantly. As of this filing, 93 of the 296 Class Members submitted Claim Forms. *See* Gallaway Decl., Ex. D. This means that the Qualified Claimants can expect to receive almost 3 times the estimated amount set forth in their individual Class Notices. *See Id*., ¶ 38. Additionally, the settlement here avoids the risks of trial and appeal, gets money to Qualified Claimants immediately, and creates a potential settlement fund that will pay each Qualified Claimant his or her allocated settlement. No Class Member has objected to or opted out of the settlement, despite having been notified of its terms. *See Id*., ¶¶ 40-41.

In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class actions. *Visa*, 396 F.3d at 116-19. Settlement eliminates the uncertainty, delay and expense of a trial, while simultaneously

{N0024184.1} 6

reducing the burden on judicial resources. *See id*. Here, the settlement is both procedurally and substantively fair.

Fairness is evaluated by examining "the settlement's terms and the negotiating process leading to settlement." *Visa*, 396 F.3d at 116. In reviewing procedural fairness, the court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation omitted). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116.

Here, the Settlement was reached through mediation and negotiation between experienced counsel with the assistance of Magistrate Judge Ellis (Ret.) (who conducted one mediation) and Magistrate Judge Aaron (who conducted three separate mediations), and subsequent extensive follow-up negotiations between counsel. *See* Gallaway Decl., ¶¶ 7, 16-17, 21-22. Furthermore, this Settlement was reached after almost four years of litigation. *See Id.*, ¶¶ 15, 42. This litigation allowed the parties to assess the strength of their claims and defenses and reach a settlement based on well-informed arm's length negotiations. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116-17 (settlement presumptively procedurally fair where "a consensual resolution was achieved based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85-86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel).

7

**4.    SUMMARY OF SETTLEMENT TERMS, THE
        CLASS'S REACTION AND DISTRIBUTION PLAN**

The Class Notice has been sent to 296 Class Members, of which, 93 Qualified Claimants have timely submitted their Claim Form and have elected to participate in the Settlement. Not one Class Member has objected or opted-out of the settlement. *See* Gallaway Decl., ¶¶ 41-42.

The Settlement provides for a non-reversionary gross settlement amount of $100,000 (the "Settlement Amount"). *See Id.*, ¶ 28. Of the Settlement Amount, $45,000 is paid by Halem, $40,000 is paid by Woods and $15,000 is paid by Pace. *Id.* Separate and apart from the Settlement Amount, but simultaneous with this motion is another application for Class Counsels' attorneys' fees and costs of $195,000, which represents a significant discount on Plaintiffs' counsels' fees and costs for litigating this matter over the last four years. *See* Gallaway Decl., ¶¶ 42-50; *see also* Plaintiffs' Motion for Final Approval of Payment of Fees and Costs. Additionally, Plaintiffs shall request that $2,500 be awarded to each Named Plaintiff as a service award. *Id.* Defendant Halem does not oppose the request for the service awards to the Named Plaintiffs. All amounts for Class Counsels' attorneys' fees, costs and the Named Plaintiffs' service awards, totaling $200,000, is to be paid by Halem, upon Court approval pursuant to the Settlement Agreement. *See Id.*, ¶ 28.

This is a claims-made settlement. Only Qualified Claimants are entitled to their individual share of the Unpaid Recovery. The individual Qualified Claimants' amounts "Individual Settlement Amount" shall be derived as follows:   The Settlement Administrator shall first determine the total number of Qualified Claimants who worked during the Covered Time Frames and who timely submitted Claim Forms. *See Id.*, ¶¶ 28-35. The Settlement Administrator shall then pay each Qualified Claimant during the Covered Time Frames the Unpaid Recovery attributable to that Qualified Claimant. *Id.* If the sum total of the Individual Settlement Amounts of all Qualified Claimants is less than the Settlement Amount, the Settlement Administrator shall pay

and increase each Qualified Claimant his or her Individual Settlement Amount on a pro rata basis but the sum of all Individual Settlement Amounts shall not exceed $100,000. *Id*. If the sum total of all Qualified Claimants' Individual Settlement Amounts is greater than the Settlement Amount, the Settlement Administrator shall decrease each Qualified Claimant's pro rata share of the Settlement Amount and pay each Qualified Claimant his or her pro rata share of the Settlement Amount but the sum of the Individual Settlement Amounts shall not exceed $100,000. *Id*. Based on the claims-made nature of the settlement, the Settlement Administrator created a list of amounts payable to each Qualified Claimant in return for their Released Claims against the Released Parties, pursuant to Section 5 of the Settlement Agreement. This list will be made available to the Court upon request. While all Class Members release the state law claims, only Qualified Claimants will release FLSA claims. *See* Settlement Agreement, Section 5; *see also* Gallaway Decl. ¶ 35.

In accordance with the Settlement Agreement, the Settlement Administrator mailed the Court-approved notice of preliminary approval to 296 Class Members. *See* Gallaway Decl., Ex. D. The notice included a summary of the terms of the Settlement and a Class Notice with instructions.

In addition to the initial mailing, RG2 Claims Administration ("RG2") performed an advanced address search (i.e., skip trace) on all of these addresses. *Id*. RG2 used the Class Member's name, previous last known address to obtain a current address. Through the advanced address searches, only 4.39% of the 296 Class Notices were unable to be delivered. *See* Gallaway Decl., Ex. D. A total of 93 Class Members submitted claims. *Id*.

9

If the Court approves the settlement, RG2 will disburse settlement payments to participating Class Members within 90 days after the Effective Date as defined in the Settlement Agreement.

## 5. ARGUMENT

### a. Approval of Class Action Settlements Under Rule 23

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class actions. *Visa*, 396 F.3d at 116-19. Settlement eliminates the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. *See id*. Here, the settlement is both procedurally and substantively fair.

### b. The Settlement is Procedurally Fair

Fairness is evaluated by examining "the settlement's terms and the negotiating process leading to settlement." *Visa*, 396 F.3d at 116. In reviewing procedural fairness, the court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*

10

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation omitted). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116.

Here, the settlement was reached through negotiation between experienced counsel with the assistance of a two magistrate judges over the course of four separate mediations, after almost four years of often contentious litigation. This litigation allowed the parties to assess the strength of their claims and defenses and reach a settlement based on well-informed arm's length negotiations. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116-17 (settlement presumptively procedurally fair where "a consensual resolution was achieved based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85-86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel).

### c. The Settlement is Substantively Fair

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*).

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

{N0024184.1}                                11

recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of final approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with 296 Class Members sharing claims under federal and various state laws.

Further litigation here would cause additional expense and delay. In addition, the Parties likely would file cross-motions for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex, require witnesses and class members to travel from all over the Country to attend and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Promptly after the Preliminary Approval Order was entered, Class Counsel, Defendants' Counsel and the Settlement Administrator began working on finalizing the Class List, which took additional efforts due to Defendants' lack of full and complete records. *See* Gallaway Decl. ¶ 36.

12

The Class Notice was disseminated to Class Members on June 6, 2019 and July 2, 2019. *See Id.*, ¶ 37. Among other things, the Class Notice contains relevant information about the nature of the lawsuit, including how the individual settlement amounts will be calculated, attorneys' fees and expenses, the proposed service awards to Plaintiffs, and how Class Members can exclude themselves from the Settlement Class or object to the Settlement. *Id.* Tellingly, not one Class Member opted out or objected to the Settlement. *See Id.*, ¶¶ 40-41.

So that Settlement Class Members can evaluate the merits of the Settlement and their projected recoveries on an informed basis, the Class Notice also contains each employee's Individual Settlement Amount based on a Given that there was not 100% participation and 93 of 296 Class Members submitted Claim Forms, those actual figures compellingly show the outstanding nature of the Settlement achieved in this case, as Qualified Claimants can expect to receive a 3 times multiple on the approximate amounts set forth in their Class Notice. *Id.* Self-evidently, these are meaningful sums for Class Members, many of whom are low- or medium-income wage earners. *Id.*

After dissemination of the Class Notice, scores of Class Members telephoned Class Counsel to inquire about the terms of the Settlement. Class Counsel devoted many hours responding to these calls, which continue as of the date of this motion. *Id* at ¶ 49. The date for objecting to the Settlement expired on August 5, 2019. Not a single Settlement Class Member objected to the Settlement or Class Counsel's fee request. *Id.* at ¶¶ 40-41. The date for requesting exclusion from the Settlement expired on August 5, 2019. Not a single Class Member requested exclusion from the Settlement. *Id.* This favorable response supports final approval. *Bellifemine v Sanofi-Aventis U.S. LLC*, 2010 US Dist LEXIS 79679, at *3 (S.D.N.Y. 2010) (Where no objections were filed and only 28 out of 5,262 class members requested exclusion, the complete lack of

{N0024184.1} 13

opposition to the settlement weighs heavily in favor of approving the proposed settlement) (emphasis added); *Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of Settlement Class Members neither objected nor opted out is a strong indication" of fairness).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

As described above, the parties have completed extensive motion practice and protracted discovery and are well prepared to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal citation and quotation marks omitted). The parties' discovery here meets this standard. Class Counsel conducted a thorough investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, and the proper measure of damages. They also researched Defendants' likely affirmative defenses. Furthermore, and as discussed above, the parties engaged in significant discovery, taking and defending 6 depositions, including those of Plaintiffs and Defendant's designees and executives, responding to over 100 opt-in discovery requests and substantial document and data discovery. *See* Gallaway Decl., ¶¶ 5-14. Furthermore, Plaintiffs engaged an expert damage analyst to create a comprehensive damage calculation which was used during the parties four separate mediations. *See Id.*, ¶ 6. These factors favor approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims."). Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case.

{N0024184.1}                                                    14

### 4. Plaintiffs Would Face Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their claims have merit, and are suitable for class and collective action treatment, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims. Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) ("The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial.").

A trial on the merits would involve significant risks for Plaintiffs, particularly as it relates to damages. It is inevitable to wonder whether their apprehension could negatively affect their performance at trial. Moreover, Plaintiffs would have to overcome Defendants' defenses, including that Class Members were exempt under the seasonal exemption to the FLSA. While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

**5. Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)**

While Plaintiffs did obtain conditional certification pursuant to 29 U.S.C 216(b), a Fed. R. Civ. P. 23 class has not yet been certified.[3] The settlement eliminates the risk and delay inherent in having to oppose any attempt by Defendants to seek de-certification of the collectively certified class, oppose Plaintiffs' anticipated motion for Fed. R. Civ. P. 23 class certification as well as the logistical hurdles and costs the parties would inevitably bear if this matter were to proceed through trial. Furthermore, there is no assurance of maintaining class certification through trial, because a court can re-evaluate the appropriateness of certification at any time during the proceedings. *See Bellifemine*, 2010 WL 3119374, at \*4; *see also In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 465, 476–77 (S.D.N.Y.1998) (risk of class being decertified at trial or risk of class certification being reversed on appeal supported approval of settlement); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). While Plaintiffs are confident that the Second Circuit would deny Defendants' application and this Court would maintain class certification through trial, risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. As such, this factor weighs in favor of approval.

---

[3] The Parties stipulated in Section 4.7 of the Settlement Agreement, for settlement purposes only, "to the certification by the Court of a class as to all claims relating to employees employed in New York State (consisting of non-exempt players, head coaches, assistant coaches, cheerleaders, officials and administrative employees who worked in New York State, in 2014 and 2015 for defendant FXFL or the individual defendants, Brian Woods, Michael Halem or Alan Pace including those that were on a team or were staff members of the Brooklyn Bolts, the Hudson Valley Fort and the Blacktips (when the Blacktips played a New York team) for purposes of settling this case) asserted in the Amended Complaint pursuant to federal and state law other than the Fair Labor Standards Act claims under Section 216(b)) (the Settlement Class), and further stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims asserted in the Amended Complaint pursuant to the FLSA for Opt-in Plaintiffs (those not employed by entities inside or outside of New York State)." *See* Dkt. No 348-1.

### 6.   Defendants' Inability to Withstand a Greater Judgment Supports the Fairness of the Settlement (*Grinnell* Factor 7)

This *Grinell* factor weighs heavily in favor of approving the Settlement as Defendants' would likely not be able to financially withstand a greater judgement. FXFL defaulted early on in this litigation and has little to no assets. *See* Gallaway Decl., ¶¶ 2, 18-19. In fact, Class Counsel worked with Woods to sell whatever limited assets of FXFL remained (i.e. football helmets, jerseys, practice and field equipment, etc…) on the secondary market, but were unable to find any interested purchasers. *Id*. As such, the only entities able to pay the settlement amount (including Class Counsel's fees and costs) were the individual Defendants. *Id*. Based on a detailed review on the individual Defendants' financial records prior to and during the various mediations and in subsequent negotiations, Class Counsel was convinced that the individual Defendants were in a weak financial position to withstand a greater judgment and that they would face a real threat of bankruptcy if a multi-million judgment were rendered at trial. "Evidence that a defendant will not be able to pay a greater judgment at trial than the amount offered in settlement tends to weigh in favor of approval of settlement, since the 'prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures.'" *Banyai v. Mazur*, 2007 WL 927583, at \*11 (S.D.N.Y. Mar. 27, 2007) (citations omitted). This is further evidenced by Woods' inability to timely pay his own \$40,000 portion of the Settlement, which has required Class Counsel to grant numerous extensions and engage the Court in at least two emergency conferences. *See* Dkt. Nos. 353-359. Needless to say, Class Counsel had to carefully consider Defendants severe financial problems during the mediations, which were a constant focus of discussion and emphasis by Defendants and their counsel. As such, this factor significantly favors settlement.

{N0024184.1}                                                             17

### 7. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendants have agreed to settle this case for a substantial amount not to exceed, $100,000 to Qualified Claimants and $200,000 to Class Counsel for fees, costs and service awards to Plaintiffs. This figure contemplates damages owed to the 296 identified class members. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to oppose the class or collective, succeeded on all claims at trial, and survived an appeal.

When focusing on the damages caused by the specific allegations in the case, Class Counsels' statistical expert calculated that if this case were to proceed to trial, the best-case scenario for class-wide monetary relief for compensatory unpaid wages figure of was $785,496. Defendants' estimated damage figure for all Plaintiffs' claims was approximately $225,000. *See* Gallaway Decl., ¶ 22. Of course, Plaintiffs' best-case scenario was premised on: (i) a successful verdict on all their claims; (ii) an award of full liquidated damages, interest and estimated attorneys' fees; and (iii) rejection of Defendants' offset arguments and other affirmative defenses. *Id.* While Class Counsel were optimistic about Plaintiffs' claims and their ability to succeed at trial, the obstacles to securing a full damage verdict at trial; having that verdict sustained on appeal; and enforcing a judgment against a potentially bankrupt entity were and are enormous.

In Class Counsel's estimation, the monetary relief provided for in this Settlement represents a substantial portion of the Class's losses from the challenged practices – specifically the Total Settlement Fund represents 12.7% of Class member damages on a full compensatory scenario basis and 44.4% when measured against the total compensatory damages allegedly incurred by all members of the Class as calculated by Defendants. *Id*. Weighing the benefits of the

Settlement against the risks associated with proceeding in the litigation, the Settlement is more than reasonable. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v Eastman Kodak Co.*, 228 FRD 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164,178 (S.D.N.Y. 2000). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at \*12 (E.D.N.Y. May 22, 1990) (approving \$2.3 million class settlement over objections that the "best possible recovery would be approximately \$121 million"). Plaintiffs submit that this Settlement far exceeds the minimum standard for approval.

### d.   The Plan of Allocation is Fair, Reasonable and Adequate

The plan of allocation is fair, reasonable, and adequate. "As a general rule, the adequacy of an allocation plan turns on ... whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re American Banknote Holographics,* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

The plan of allocation uses a set amount of Unpaid Recovery for each Class Member in a Covered Position during the Covered Time Frames. If there is 100% class member participation, the Unpaid Recovery would equate to approximately 50% of 1-week of unpaid wages and unreimbursed expenses for each Class Member during their respective seasons. However, because there is not 100% participation, the Settlement Administrator shall pay and increase each Qualified Claimant his or her Individual Settlement Amount on a pro rata basis but the sum of all Individual Settlement Amounts shall not exceed $100,000. Qualified Claimants can expect to receive a 3 times multiple on the approximate amounts set forth in their Class Notice. *See* Gallaway Decl. ¶ 38. All Settlement Class Members were informed of this plan of allocation in the Class Notice, and none objected to it. *See Id.*, ¶¶ 40-41.

## CONCLUSION

For the reasons stated herein, in Plaintiffs' memorandum of law in support of preliminary approval, and in the Court's May 9, 2019 Order granting preliminary approval, Plaintiffs respectfully request that the Court enter an order granting final approval to the parties' Settlement and approving and ordering the distribution of the Gross Settlement Fund.

Dated: New York, New York
August 15, 2019

_____/s/_____

Brett R. Gallaway
Lee S. Shalov
McLAUGHLIN & STERN, LLP
260 Madison Ave.
New York, NY 10016
Telephone: (212) 448-1100
*Attorneys for Plaintiffs and Class Members*

{N0024184.1}                    20